J. H. Flippen, Executor, v. State Life Insurance Company.

Decided November 12, 1902.

**1.—Life Insurance—Application—Warranties—Breach.**

Where a policy of life insurance made the application of the insured a part thereof, and made the answers therein warranties, false statements in the answers to the effect that the insured had not consulted a physician in ten years and that she had never had a doctor except in childbirth were warranties, and whether material or not, their falsity forfeited the policy.

**2.—Same—Consulting Doctor.**

The falsity of the statement by the insured that she had not consulted a physician was sufficiently shown where it appeared that when a doctor was sent for and came she did not object to his presence, but permitted him to examine and prescribe for her, and stated her condition to him, although she had objected to his being sent for, and neglected to take the medicines he prescribed.

**3.—Same—Evidence—Doctor's Books.**

Plaintiff was not injured by the introduction of the doctor's books to show that he prescribed for the insured during her last illness, where plaintiff himself

testified that the insured was under treatment of the doctor during such illness and until her death; nor was there error in permitting the druggist to testify that he had filled the doctor's prescriptions for the insured, though he did not know who brought them to the drug store.

Appeal from the District Court of Bexar County. Tried below before Hon. J. L. Camp.

*J. R. Norton* and *Ed Haltom,* for appellant.

*Denman, Franklin & McGown* and *Chas. F. Coffin,* for appellee.

FLY, ASSOCIATE JUSTICE.—Appellee instituted this suit to obtain a cancellation of two policies of insurance, each for $5000, issued on the life of Mrs. Ada Wilson McCue. After hearing the evidence the trial court instructed a verdict for appellee upon which is based the judgment from which this appeal has been perfected.

The appellant was shown to be the son of Mrs. McCue and executor of the estate, his inventory showing that she had no estate except the two policies involved in this suit. On November 19, 1900, Mrs. McCue made an advance application to the appellee for policies of insurance on her life, in which she stated that she had property of the value of $30,000, it being a rule of the company that no woman would be insured unless the premiums were paid from her own earnings, or from the income of her own individual property. In her application in answer to the question, "Have you consulted a physician within the past two years for anything trivial or otherwise, and for what?" Mrs. McCue said: "No, not for ten years." She was asked, "When did you last consult a physician? Name an address of physician who last attended you," and answered, "Never had any except in childbirth." The uncontroverted evidence was to the effect that on October 14 or 15, 1900, a little more than a month before Mrs. McCue had answered the questions as above indicated, she had a bilious attack and was attended, examined, and treated by a physician. The applicant had also been asked if she had ever had any disease of the liver, and·replied that she had not, and the physician who had attended her swore that in October, 1900, "her liver was in an extreme congested or choked condition as to its secretions, and that it was a condition that had existed for some days." The physician informed her that further treatment would be necessary to relieve her. It was stated in the application that the statements and answers made therein, as well as those made to the medical examiner, were warranted to be full, complete and true, and were offered to the company as a consideration for the contract. It was provided in each of the policies that "in consideration of the declarations, answers, agreements, and warranties made in the application for this policy, which is hereby made a part of this contract," and the payment of the premium, the policy of insurance was issued. At the time the policies were de-

livered to appellant Mrs. McCue was confined to her bed with the illness which resulted in her death.

By the terms of the applications and policies, the applications were clearly and explicitly made a part of the policies and must be read into and be considered in connection with them. In the case of Insurance Company v. Pinson, 94 Texas, 553, almost the same language as to the statements in the application being warranted as true and becoming a consideration for the contract were used in the application, and in the policy it was stipulated: "In consideration of the statements and agreements in the application for this insurance, which are made a part of this contract," etc., the policy was issued, and it was held that the statements in the application must be given the same force as if written into the policy itself, and that they constituted a warranty. In that case the policy was held to be void because there was a discrepancy of a few years between the ages of sisters of the applicant and the true ages. It was said by that court: "The provisions of the policy constitute a warranty of the truth of the statement made in the application, and the discrepancy between the ages of the sisters as stated and their actual ages caused a forfeiture of the contract of insurance."

We conclude that the statements to the effect that the applicant had not consulted a physician in ten years, and that she had never had a doctor except in childbirth, were warranties, and whether material or not, their falsity forfeited the contracts of insurance. National Fraternity v. Karnes (Texas Civ. App.), 60 S. W. Rep., 576; Ash v. Association (Texas Civ. App.), 63 S. W. Rep., 944.

If the statements as to disease and consultation with a physician were, as we conclude, warranties, then the court was clearly justified in instructing the jury to return a verdict for the insurance company, for there was no question of fact to be determined. The applicant stated that she had not consulted a physician, and if such statement was shown to be untrue, whether it was material or not, it was made the basis of the contract, and its untruthfulness forfeited the contract in the eyes of the law. Life Assn. v. Harris, 94 Texas, 25; Cobb v. Association (Mass.), 26 N. E. Rep., 230; Insurance Co. v. McTague (N. J.), 9 Atl. Rep., 766.

It is contended that the court refused to allow appellant to swear that his mother objected to having Dr. Barnitz call on her. He was allowed, according to the statement of facts, to testify to the identical facts claimed to have been ruled out. The testimony did not, however, tend to contradict the statement of Dr. Barnitz that he had examined and treated Mrs. McCue and that she had told him that "she was bilious and choked up." No matter who had summoned the doctor, and no matter if she had objected to the doctor being sent for, when he came she did not object to his presence, but permitted him to examine and prescribe for her, and stated her condition to him, and was advised by him. It may be that she neglected to take the medicine that he pre-

scribed, and still she had consulted with him, and the statements that she had not consulted with a physician and that she had never had a doctor except in childbirth are controverted by the record. It is not pretended that she did not make the statements in the application, and it can not be contended, under the facts in evidence, that they were true, but on the other hand the testimony of Dr. Barnitz as to his calls, examinations, treatment and advice are in nowise contradicted, and they clearly constituted a consultation.

Appellant swore that his mother was taken sick on December 26, 1900, and that she was under treatment by Dr. Jones until her death, and he could not have been injured by the introduction of the books of Dr. Jones which showed that he had prescribed for Mrs. McCue during her last illness.

Dr. Barnitz swore that he prescribed for Mrs. McCue, and it was not error to allow the druggist to testify that he had filled the prescriptions. He did not know who brought them to his drug store.

None of the assignments of error is well taken, and the judgment will be affirmed.

*Affirmed.*

Writ of error refused.