## SECURITY BEN. ASS'N v. WEBSTER.
### (No. 1786.)

(Court of Civil Appeals of Texas. Amarillo. March 30, 1921.)

1. Insurance ☞825(2)—Court should not give peremptory instruction where evidence conflicted as to insured's health when policy was delivered.

In an action on a life policy of a benefit association, where the evidence as to whether insured had tuberculosis at the time of the delivery of the policy was conflicting the trial court would not have been warranted in giving a peremptory instruction to find for defendant insurer as to the matter of misrepresentations by insured that he was in good health.

2. Insurance ☞723(6) — Applicant's false statement as to medical attendance avoids liability unless waived.

Where insured's statement, made in his application for the policy, with reference to previous consultation of physicians, was false, the falsity of such statement avoids the liability of defendant benefit association, unless the defense was waived, or defendant association is estopped from asserting it either by requiring additional proofs or in its statement of the grounds for rejection of the claim.

3. Insurance ☞755(1)—Requirement of additional proof of loss not waiver of misrepresentation in application.

Defendant benefit association's requirement of additional proof of loss was not a waiver of misrepresentation by insured as to previous consultation of physicians, where the association had no knowledge at the time of calling for the additional proof that such representation in the application was false.

4. Insurance ☞755(1)—Provision that demand for proofs of loss is not waiver of defense held valid.

Provision in an insurance contract issued by a benefit association that a demand for proofs of loss or additional proofs should not be considered a waiver is valid, and prevents such act from having any such effect.

5. Insurance ☞755(1)—Association not estopped from asserting defense of misrepresentation.

Defendant benefit association sued on its policy of life insurance *held* not to have waived, and not to be estopped from asserting, the defense of misrepresentations by insured as to previous consultation of physicians, by statements made in its letter of rejection of claim.

Appeal from District Court, Roberts County; W. R. Ewing, Judge.

Suit by Mariah Webster against the Security Benefit Association. From judgment for plaintiff, defendant appeals. Judgment reversed and rendered for defendant.

Hoover, Hoover & Willis, of Canadian, for appellant.

Coffee & Holmes, of Miami, for appellee.

BOYCE, J. This suit was brought by appellee against appellant, a fraternal benefit society, on a beneficiary certificate issued by the society to Fred T. Webster, insuring his life in favor of the appellee, Mariah Webster, his sister. The society defended on the ground that certain representations made by the insured in the application for the insurance, which representations were by the contract made warranties, were false. Such representations and the contention of the society in reference thereto are as follows:

(1) That the applicant was at the time of the application and delivery of the certificate in good health. It was contended that the insured was at such time in bad health, having tuberculosis in an advanced stage.

(2) That the applicant had not "consulted professionally or been treated by a physician or surgeon within the past five years." It was claimed that this statement was false in that the said applicant was treated by Dr. E. O. Williamson in May, 1916.

(3) That the applicant had never been treated for or advised or informed by any physician that he had tuberculosis. It was contended that this statement was false in that the said Dr. Williamson had in May, 1916, informed the said Fred T. Webster that he had tuberculosis and that it would require long treatment under proper conditions of climate, etc., to cure him.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

(4) That applicant had no insurance on his life, whereas he in fact had such insurance in the amount of $1,000 in the Woodmen of the World.

The plaintiff answered these defenses by denial and by special answers as follows:

(1) That the insured made the representation as to other insurance in good faith; that long prior to such time he had quit paying his dues to the Woodmen of the World and believed his insurance therein had lapsed; that the dues had been paid by insured's father-in-law, without his knowledge and consent, and such insurance kept in force in this way, without his knowledge.

(2) That the society, after it had knowledge of the fact of the existence of the insurance, and the alleged falsity of the statement that the insured had not been attended by a physician within five years of the time of making his application, demanded additional proof of the beneficiary, and thus waived forfeiture of the insurance by reason of such facts.

(3) That the society gave as reasons for its refusal of payment of the amount due on the certificate the falsity of representations made by the insured as to the condition of his health and as to the other insurance, and thereby waived any defense based on the falsity of the representation as to the consultation of a physician, as made in the application.

These are the material facts: The said Fred T. Webster made application to the society for insurance in September, 1917. In this application the representations as to health, etc., already set out were made and warranted to be true. The said Webster had some time before this been a member of the Woodmen of the World, also a fraternal benefit society, and carried insurance in said order amounting to $1,000. But about nine months prior to the making of his application in the defendant society he had quit paying his dues to the Woodmen of the World, intending to give up his membership in said order and abandon his insurance therein and thought that such had been the result of his failure to pay his dues to said order; but as a matter of fact his father-in-law, without his knowledge or consent, kept up the payment of the dues to the Woodmen of the World until the death of the insured. Dr. Williamson, of Gurley, Ala., testified that in May, 1916, he treated the applicant for tuberculosis and informed him at the time that he had tuberculosis and would have to undergo long treatment under proper conditions of climate, etc., if he expected to recover; that he again treated the insured for such disease in April, May, June, July, and September, 1918. Drs. Kelly & Gunn examined the deceased at Miami, Tex., in September, 1917, and gave it as their opinion that he did not then have tuberculosis, and had not previously had it to any serious extent. In February, 1918, he was treated by Dr. Fisher at Roswell, N. M., who testified that the deceased, was then in a hopeless condition of tuberculosis. Deceased returned to Alabama, and was thereafter treated by Dr. Williamson as stated, and also by Dr. Graham, dying of tuberculosis in January, 1919. The beneficiary made proof of the death of the insured on forms furnished by the society. The by-laws, which were made a part of the contract of insurance by the terms of the benefit certificate, and the form of proof furnished, provided that "the requiring of either original or additional proof shall in no case be considered an acknowledgment of any liability or a waiver of any forfeiture" by the society. One of the questions contained in the proof made by the plaintiff and its answer are as follows:

"Q. Give the name and address of each and every physician who has prescribed for or attended deceased or who deceased has consulted during the last five years of his life. A. Dr. B. E. Graham, Huntsville, Ala.; Dr. E. O. Williamson, Gurley, Ala."

Another question and its answer contained in the proof of death were as follows:

"Q. Had deceased any other life benefits or insurance on his life? If so in what societies, associations, etc.? A. Woodmen of the World, Omaha, Neb., $1,000."

On receipt of this proof the society demanded, before passing on the claim, that a statement by Dr. Williamson be furnished as additional proof. This was not furnished. Both the beneficiary and society endeavored to secure a statement, but the doctor failed to give one, and the society finally rejected the claim. In the letter addressed to plaintiff by the society, notifying her of this action, this statement is made:

"The claim made on account of the death of Fred T. Webster was considered by our executive committee at its meeting this week, and unanimously rejected. * * * An investigation into the claim has disclosed the fact that the certificate was secured by misrepresentation. Misrepresentation covered two or three things; that is, there were two or three misrepresentations; one as to condition of health, and another as to amount of insurance carried. For these reasons, among others, the claim was unanimously rejected."

The jury found on special issues that the deceased was not, at the time of the delivery of the certificate, or at any time prior thereto, afflicted with tuberculosis; that the deceased had quit paying membership dues in the Woodmen of the World, with the intention of abandoning his membership therein, and did not, at the time of his application for membership in the defendant society, know or believe that his membership in the Woodmen of the World was being kept up by the payment of his dues by his father-in-law;

that the society did not know at the time it made demand for additional proof that the said Fred T. Webster was a member of the Woodmen of the World at the time he made application for membership in the defendant society. No issue was submitted as to the falsity of the statement made in the application as to the consultation of a physician by the applicant within five years prior to the time of making the application. The plaintiff requested the court to submit the following issue:

"Did the defendant company, after learning of the untruthfulness of the statement made by the deceased concerning the consultation and treatment by a physician previous to his application, treat the policy as in force and cause the plaintiff to incur expense and loss of time in trying to secure additional information requested from one Dr. Williamson?"

And the jury answered this question, "Yes." The court entered judgment for the plaintiff.

[1] Appellant's contention presented by the first assignment is that the court should have given its requested peremptory instruction because the evidence conclusively sustains its assertion that each of the four statements made in the application and made the basis of the defense were false, and the falsity of any one of them entitled the defendant to judgment. While the evidence tends very strongly to show that the insured did have tuberculosis at the time of the delivery of the policy, yet there was evidence to the contrary, so that the court would not have been warranted in giving a peremptory instruction as to this phase of the case. As shown by the above statement, it was assumed in the trial of the case that the statement made in the application with reference to previous consultation of physicians by the applicant was false. The evidence of Dr. Williamson to this effect was uncontradicted, and the plaintiff herself assumed such fact in the issue requested by her.

[2] The falsity of such statement avoids liability of the society unless this defense was waived or the defendant estopped from asserting it, either by requiring additional proofs or in the statement of the grounds for rejection of the claim. Brock v. United Moderns, 36 Tex. Civ. App. 12, 81 S. W. 340; Security Mutual Life Insurance Co. v. Calvert, 39 Tex. Civ. App. 382, 87 S. W. 889; Id., 101 Tex. 128, 105 S. W. 320; Flippen v. State Life Insurance Co., 30 Tex. Civ. App. 362, 70 S. W. 787.

[3-5] We do not think the requirement of additional proof can be held to be a waiver because: (1) The evidence does not show that the society had knowledge at the time of calling for a statement from Dr. Williamson that this representation in the application was false. The statement in the application that the applicant had not consulted a physician during the past five years was made

in September, 1917. The statement in the proof of death was that Drs. Williamson and Graham had attended the deceased during the past five years of his life. He died in January, 1919. So it is apparent that both statements could have been true, and the society had the right to call for the additional statement requested in a further investigation of the claim. The case of Security Mutual Life Insurance Co. v. Calvert, 101 Tex. 128, 105 S. W. 320, was decided on an identical state of facts. (2) The provision in the insurance contract that a demand for proofs or additional proofs should not be considered as a waiver is valid, and prevents such act from having such effect in this case. American Central Insurance Co. v. Nunn, 98 Tex. 191, 32 S. W. 497, 68 L. R. A. 83; Roberts, Willis & Taylor Co. v. Sun Mutual Insurance Co., 19 Tex. Civ. App. 338, 48 S. W. 559. Nor do we think the society waived or is estopped from asserting this defense by the statements made in the letter of rejection. The following quotation is a fair statement of the decisions concerning the rule of law here relied on by appellee:

"There are many cases asserting the rule that, where an insurer denies liability for a loss on one ground, at the time having knowledge of another ground of forfeiture, it cannot, therefore, insist on such other ground, especially where the insured has acted on its asserted position and incurred expense by bringing suit, or otherwise. Where, however, the ground not asserted is one which could not have been cured by the insured, the rule is of doubtful application, as where a cancellation is asserted and there exists a breach of warranty, and the rule does not apply to grounds of objection not known to the insurer if the beneficiary was not, by the ground of the refusal, led to take or refrain from taking, any action which operated to his injury."

For a more elaborate statement and review of the authorities see Cooley's Briefs on Insurance and Supplement, pp. 2680-2682. The statement in the letter of rejection does not, we think, bring this case within this rule at all. Such statement does not attempt to give all the reasons for rejection. It states that misrepresentation is the basis of the rejection, and that there were two or three misrepresentations. Two misrepresentations were then stated, and the conclusion announced that the rejection was for "these, among other reasons." The society was not required to give any reason for the rejection of the claim, and under the circumstances we do not think it can be confined to defending on the two grounds specifically stated. Also the evidence does not show that the society knew at the time of the rejection of the claim that the statement was false. Dr. Williamson had refused to make a statement for either the beneficiary or the society, and, so far as the record shows, the society had no actual knowledge of what the true facts were

until the depositions of the physician were taken. We do not decide whether, if it were true that the society knew of this misrepresentation and placed the rejection of the claim solely on other grounds, it would be estopped from. asserting or be held to have waived this defense. It does not appear that the plaintiff has been led to take any different position or incur any additional expense as a result of this statement, and the rule under the circumstances would be at least "of doubtful application." Authorities above.. See, also, Brown v. Musgrave, 222 S. W. 606; Hutchings v. Binford, 206 S. W. 557.

The above holding is sufficient to dispose of the case, and we are not prepared to announce a conclusion as to whether) the answer to the question as to other insurance would avoid the defendant's liability. We think· insurance in the Woodmen of the World, also a fraternal organization, would come within the meaning of the representation in this particular instance. The question as to whether the applicant had any insurance was followed by a further question calling for a statement as to the "companies, associations, or societies" in which such insurance was had. So that it is clear that this character of insurance was being inquired about. But some authorities hold that insurance taken out on the life of a person without his knowledge and consent is not valid; it being against public policy to permit this to be done. Metropolitan Life Insurance Co. v. Blesch (Ky.) 58 S. W. 436; Acme Mfg. Co. v. McCormick, 175 N. C. 277, 95 S. E. 555; L. R. A. 1918F, p. 572, and note page 574 et seq.; note 56 L. R. A. 585; 14 R. C. L. 889. It may be that, if it is against public policy to permit one to take out insurance on the life of another, without his knowledge or consent, such rule might prevent the maintenance of insurance already taken out. The courts of this state hold that the falsity of answers in reference to the personal health and condition of the applicant will avoid the policy, though the answers be made in good faith. Supreme Lodge, Knights & Ladies of Honor, v. Payne, 101 Tex. 449, 108 S. W. 1160, 15 L. R. A. (N. S.) 1277, and authorities following it. The representations in such cases, however, were made in respect to the matters that were within, or supposed to be within, the knowledge of the applicant, and if it should be said that the insurance maintained in the Woodmen of the World, as we have stated, is valid, yet we doubt whether the rule announced in such cases as Supreme Lodge v. Payne, supra, would apply. 14 R. C. L. 1069, 1070, § 249. The question propounded in the application was "Have you any insurance on your life?" Now, if it should be held that the insurance taken out or maintained on the applicant's life by some one else without his knowledge or consent is valid, yet it might possibly be

reasonably held that the question under the circumstances referred to insurance maintained by the applicant or with his knowledge and consent. We do not decide as to these matters, but make these suggestions, as showing the difficulties in the solution thereof, and place our disposition of the case upon the conclusions first announced.

It is our opinion that the judgment should be reversed, and here rendered for the appellant.

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes