## HARTFORD FIRE INSURANCE COMPANY v. J. J. WRIGHT.

Decided December 11, 1909.

**1.—Fire Insurance—Encumbrance—Warranty Against.**

A warranty embraced in a policy of fire insurance against encumbrance existing at the time upon the property insured, is valid and its violation renders the policy void; and, in the absence of a written or printed application for the insurance. there is no duty resting upon the agent of the insurance company to make inquiry as to the existence of encumbrances upon the property insured.

**2.—Same—Waiver—Actual Knowledge—Insufficient Evidence.**

A waiver of a warranty against encumbrances, in a policy of fire insurance, can be established only by proof of actual knowledge on the part of the agent of the insurance company of the existence of the encumbrance. Evidence considered, and held insufficient to meet the measure of proof required in such case.

**3.—Same—Act Construed.**

The Act of March 27, 1903 (Gen. Laws 1903, p. 947) providing in effect that answers or statements made by the insured in the application for or contract of insurance, shall not render the policy void or voidable even though false unless it be shown that the matter or thing misrepresented was material to the risk or contributed to the loss, has application only to those cases in which there has been misrepresentation by the insured, and not to cases in which there has been merely concealment of material facts.

**4.—Same—Landlord's Lien—Mortgage Lien—Distinction.**

Mortgage lien to secure rent, considered, and held so materially different from the lien given by statute to landlords as not to render immaterial the want of notice of the mortgage lien when the insurance agent had notice of the existence of the landlord's lien.

Appeal from the County Court of Palo Pinto County. Tried below before Hon. E. B. Ritchie.

*Alexander & Hogsett, Wm. Thompson* and *J. M. Wilson,* for appellant.—A clause in a policy of insurance, providing that the policy shall be void "if the subject of insurance be personal property and be or become incumbered by a chattel mortgage" is valid and reasonable and should be given effect. Aetna Ins. Co. v. Holcomb, 89 Texas, 404; United States Ins. Co. v. Moriarty, 36 S. W., 943; Insurance Co. of N. A. v. Wicker, 54 S. W., 300; Insurance Co. of N. A. v. Wicker, 93 Texas, 390.

Knowledge gained by a former agent while transacting other business than that of his principal, will not be imputed to the principal in connection with a matter happening long subsequent and after the former agency has terminated. Continental Ins. Co. v. Cummings, 95 S. W., 48; Queen Ins. Co. of Am. v. May, 35 S. W., 832; Keller v. Liverpool & L. & G. Ins. Co., 27 Texas Civ. App., 102; Irvine v. Grady, 85 Texas, 124; Kauffman v. Robey, 60 Texas, 311; Congar v. Chicago & N. W. Ry. Co., 1 Am. Rep., 165.

*W. P. Gibbs* and *J. T. Ranspot* and *Penix & Eberhart,* for appellee.—The clause of the policy herein sued on providing: "If the subject of insurance be personal property and be or become encumbered by a chattel mortgage" was waived by the knowledge of the company or its agents Moore and Orendorff at the time and prior thereto of the existence of such mortgage at the time of the issuance of the policy herein sued on. Orient Ins. Co. v. Wingfield, 49 Texas Civ. App., 202; Alamo Fire Ins. Co. v. Lancaster, 7 Texas Civ. App., 677; Alamo Fire Ins. Co. v. Brooks, 32 S. W., 714.

The clause of the insurance policy sued on which provides: "If such insurance be personal property and be or become incumbered by a chattel mortgage said policy shall be void," before it can be made available in this case as a defense must show that same was material on the trial of said cause, which issue must be determined by the court or jury trying same. Chapter 5, art. 3096aa et seq., Acts of 1903, page 94.

The lease contract executed by J. J. Wright in favor of Mayhew & Company of date 15th day of August, 1906, was merely a contract

between landlord and tenant, and the lien therein contained was no more than was given by law and was not a contract of which defendant could in any way complain and did not violate the mortgage clause in the policy herein sued on. Sayles' Revised Statutes, 1895, arts. 3251 and 3235.

CONNER, CHIEF JUSTICE.—This is an appeal from a judgment in the sum of five hundred dollars for loss by fire upon a policy of insurance issued by the appellant company on the 30th of September, 1907. In defense, among other things, appellant pleaded a clause in the policy of insurance which provided that the policy should be void "if the subject of insurance be personal property and be or become encumbered by a chattel mortgage." To which appellee replied in a supplemental petition that the agent of the appellant company, who issued the policy, at and before the time·thereof had full notice of the fact that the property insured was encumbered by mortgages, and that hence the provision of the policy pleaded in defense had been waived. The trial resulted in a verdict and judgment in appellee's favor as stated.

Error is first assigned to the action of the court in refusing to give a requested special charge, instructing the jury peremptorily to return a verdict for the defendant, and we are of opinion that the assignment must be sustained. It is undisputed that on the 15th day of August, 1906, appellee leased from Mayhew & Company, of Cisco, Texas, certain hotel property situated in the town of Gordon, Palo Pinto County, for a period of five years, agreeing to pay therefor the yearly rent of six hundred dollars, payable as follows: Twenty-five dollars upon delivery of the written instrument which evidenced the lease and contract, and fifty dollars on the first day of September, 1906, and on the first day of each consecutive month thereafter until the expiration of the lease. The lease provided that any default in the payment of any rent authorized the lessors to declare the contract canceled and to re-enter the premises without prejudice to any legal remedy for the collection of rent. The lease contained the following further provision: "It is expressly agreed and understood by and between the parties hereto that the party of the first part shall have and by this contract a valid first lien is hereby created upon any and all the goods, furniture, chattels or property of any description belonging to said party of the second part now situated in or which may be hereafter placed in or upon said premises, as a security for the payment of all rents due or to become due hereunder, and any and all exemption law in force in this State by which said property might be held, are hereby expressly waived. It is also understood that the rights and remedies herein given shall be cumulative of the rights, liens .and remedies in favor of landlords provided by the statutes of this State."

Prior to the execution of this lease, however, appellee had, to wit, on the 14th day of April, 1906, executed in due form a chattel mortgage upon specified articles of hotel furniture to secure the payment of the sum of one thousand dollars, which matured on the 17th day of April, 1907. It is undisputed that both instruments above re-

ferred to were in full force and effect at the date of the issuance of the policy herein, and at and subsequent to the date of the fire which destroyed the property covered by the policy. It is also undisputed that at the time of the negotiation of the policy appellee did not inform Mr. Moore, appellant's agent who issued the policy, of the existence of the lease contract or of the existence of the mortgage appellee had given to Mayhew & Company to secure them in the payment of said one thousand dollars; and Moore, the agent, testified, without contradiction, that he personally conducted the negotiations and issued the policy sued upon and also a policy in the Houston Fire & Marine Insurance Company covering the hotel furniture and fixtures, and that he had no knowledge whatever of the existence of either of the liens mentioned, until after the fire. The policy in the Houston Fire & Marine Insurance Company had been issued by Moore on February 13, 1907, and both policies covered a period of twelve months from the several dates of their issuance; the fire and loss occurred on February 2, 1908.

Appellee's contention, however, is that said agent Moore had knowledge of such facts as to put him upon inquiry, and, therefore, had notice of the liens as a matter of law. This contention is predicated upon substantially the following facts: Prior to January 9, 1905, one McColister was an insurance agent in the town of Gordon, representing a number of companies, including the Phoenix, the Houston Fire & Marine, and the Hartford, sued in this case. On January 9, 1905, McColister issued a policy in the Phoenix for the sum of seven hundred and fifty dollars, covering appellee's hotel furniture, which remained in force until January 9, 1906. Appellee testified that after McColister left Gordon, "his wife looked after the insurance business;" that he "sent to her or requested her to issue me a mortgage permit on account of an outstanding mortgage on my furniture. She issued this permit and brought it to me and I did not paste the same in the policy, but merely folded it up and placed it in the policy. . . . I had other policies written by McColister with this permit, but I do not know in what companies they were nor the amounts."

Moore, the agent, testified to the effect that he first began writing insurance in November, 1906; that previous to the time he became agent for the fire insurance companies represented by McColister, "McColister lost his mind and for some time his wife continued his insurance for him and was looking after the same at the time we took charge;" that he personally negotiated with appellee for the issuance of the policy sued on and also negotiated with him for the issuance of a policy in the Houston Fire & Marine Insurance Company covering his hotel furniture and fixtures; that the policy in the company last named was issued in renewal of another policy in that company which had been issued by McColister and which expired on January 9, 1907; that when he assumed charge he began representing some twelve fire insurance companies, among which were all of the companies herein named, which had also theretofore been represented by McColister at Gordon; that "after he left and for a while his wife continued to represent the companies before we took

charge as agents; fire insurance registers for each one of these companies that was kept by McColister and his wife were turned over to us when we took charge of the agency; . . . but unless the policy expired some time after we took charge of the agency I would not pay any attention to the entries in these books. Yes, sir, there was turned over to me by McColister a book or agent's register kept by him for the Phoenix Insurance Company and Hartford Insurance Company and all the companies above mentioned. If there is any record in that book, Phoenix Insurance Company's book, of a policy having been issued to plaintiff, J. J. Wright, in that company covering his hotel furniture and fixtures I do not remember to have seen the same. If there had been a record of such a policy in that book I could have looked it up, seen the same and ascertained the character of policy that was issued to him by McColister; that McColister could have written a policy in the Hartford Insurance Company and not pasted it in the register or on the record." The witness in another place testified without contradiction that the policy sued on was the first that had been issued in the Hartford, and that it contained no mortgage permit, nor did the policies in the Houston Fire & Marine Insurance contain such permit.

Appellees, in addition to his testimony before set out, further testified that just prior to the issuance of the policy sued on, Mr. Moore, appellant's agent, came to him and "asked me if I wanted my insurance renewed on my furniture in the hotel, and I told him that I did, and he then issued the policy sued on and delivered it to me. Yes, I am sure that he had a policy of insurance on my furniture expiring about that time, September 20, 1907, and that policy had a mortgage permit in it. . . . I am reasonably sure that I had a policy expiring about the time this Hartford policy was issued and delivered to me by Mr. Moore. I think it expired some time in August. I do not know what company it was in; do not know the amount of the policy, and can not tell you the date it expired. It was a policy that had been written by agent McColister before Moore took charge as agent; it did have a mortgage permit in it; I supposed the renewal policy was like the old one. I don't know where this policy is now; I suppose it was burned up in the fire. I did not tell Mr. Moore what it contained; I did not show him the policy. No, Mr. Moore delivered this Hartford policy to me and I accepted it without looking at it and paid the premium to him."

It is well settled in the authorities that a warranty embraced in a policy of fire insurance against encumbrance existing at the time upon the property insured, is valid and that its violation renders the policy void. See Aetna Insurance Company v. Holcomb, 89 Texas, 404; United States Insurance Co. v. Moriarty, 36 S. W., 943; Insurance Company of N. A. v. Wicker, 54 S. W., 300; s. c., 93 Texas, 390. It was held in the case first cited that it does not devolve upon an insurance agent to make inquiry as to the existence of mortgages or other liens upon property insured, when, as in this case, no written or printed application is presented by the insured. The agent Moore was not required to exercise diligence in the examination of

Appellant could be held to have waived the warranty clause relied upon only by proof of actual knowledge on the part of appellant's agent of the fact that the mortgage liens established by the appellee, were in existence at the time of the issuance of the policy. It can not reasonably be contended that proof that a permit at one time had been issued by the wife of the original agent in behalf of a company other than appellant, is sufficient to establish actual knowledge of the issuance of such permit. So far as shown the permit was issued upon a slip of paper inclosed in the policy held by appellee, and it was not even shown that such permit was endorsed or noted upon any insurance register afterwards coming into the hands of the agent Moore. Appellee's statement that he felt "reasonably sure" that at the time of the issuance of the policy in question he had other policies which contained a mortgage permit, is certainly too indefinite to establish notice by appellant's agent in view of appellee's further statement that he did not know the company issuing the permit and that the policy expired some time in August, several months before the issuance of appellant's policy. Had it been shown with any degree of certainty that a valid policy was in fact in existence containing mortgage permit which was about to expire, and that appellee requested its renewal, then it might be that he would be justified in assuming that the renewal would be in the same company and upon the same terms as the policy renewed, and further justified in accepting the policy delivered to him without reading it, and appellant, therefore, be held liable on the ground of estoppel, lest, otherwise, the act of its agent in substituting a new company would operate as a fraud upon appellee; but no estoppel of this character was pleaded, and the proof only shows that appellee had two policies upon his furniture, one issued by the appellant and the other by the Houston Fire & Marine Insurance Company, neither of which companies, as the undisputed proof shows, ever waived the warranty clause under consideration by the issuance of a mortgage permit.

It is contended that effect can not be given to the warranty clause under consideration because it was neither pleaded nor proved that the existence of the mortgages shown was material, and the Act relating to contracts of insurance approved March 27, 1903, is cited in support of this contention. This Act amends title 58, Revised Civil Statutes, by adding thereto chapter 5, embracing articles 3396aa, 3096bb, 3096cc, 3096dd, 3096ee, 3096eee. See General Laws 1903, page 94. The Act provides (article 3096aa) that "any provision in any contract or policy of insurance issued or contracted for in this State which provides that the answers or statements made in the application for such contract or in the contract of insurance if untrue or false shall render the contract or policy void or voidable, shall be of no effect and shall not constitute any defense to any suit brought upon such contract unless it be shown upon the trial thereof that the matter or thing misrepresented was material to the risk, or actually

contributed to the contingency or event on which the said policy became due and payable, and whether it was material and so contributed in any case shall be a question of fact to be determined by the court or jury trying such case." While this Act doubtless relates to fire as well as life insurance policies, we think it has no application in this case. The Act applies only to those cases in which there has been misrepresentation made by the insured, either in the application for the contract of insurance or in the policy itself. In the policy before us no representation of any kind whatever was made in either application or policy, and the provision of the policy relied upon to defeat it is a warranty in nature contractual to which the Act in no wise related.

There is a further contention to the effect that the lien created by the lease contract "is not stronger than the statutory lien which the law gives to the landlord, of which appellant was charged with notice, inasmuch as J. A. Moore, appellant's agent, testified that he knew appellee was occupying lease premises." It being also contended in this connection that the mortgage lien for the sum of one thousand dollars "did not cover the articles lost and destroyed by fire, and if it covers any of the articles, there is more than enough unencumbered to exhaust the amount of appellant's policies." But we think these contentions can not be upheld. It is quite clear that the mortgage lien is in several respects, unnecessary to notice, materially different from the lien given landlords by the statute, and it is by no means clear from the evidence that the furnishings specified in the mortgage would not form a material part of the loss for which appellee sues in this case. The lien created by the leasehold contract, we think, was also in several respects materially different from that of the statute. For instance, the lien of the statute can not continue or be enforced "for a longer period than the current contract year, it being intended by the term 'current contract year' to embrace a period of twelve months reckoning from the beginning of the lease or rental contract, whether the same be in the first or any other year of such lease or rental contract." The article further provides that it "shall not be construed as in any manner repealing or affecting any Act exempting property from forced sale." (See Revised Statutes, article 3251.) While the lien of the contract of lease on its face covers the full period of the lease, contains the express waiver of all exemption laws, and distinctly provides that it shall be cumulative of the liens and remedies in favor of landlords provided by the statutes of this State, thereby indicating a clear purpose of providing something in addition to the lien given by the statute.

We conclude on the whole that the court should have given the peremptory instruction, and that the judgment should be reversed and here rendered for appellant.

*Reversed and rendered.*